UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SHERMAN HENRY,

**SECOND AMENDED COMPLAINT**

**15 cv 8574 (AJN)**
**ECF Case**

Plaintiff,

vs.

The CITY OF NEW YORK,
NEW YORK CITY POLICE OFFICERS
GREGORY SANTANA,
FABRIZIO RANDAZZO,                                          **JURY TRIAL DEMANDED**
SERGEANT DANIEL GAGLIARDI
in their individual and official capacities,

Defendants.
-------------------------------------------------------------x

Plaintiff Sherman Henry, by his attorney, Cyrus Joubin, complaining of the Defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.   This civil rights action arises from the First Amendment retaliation and

malicious prosecution of Sherman Henry ("Plaintiff") after he filed a civil rights lawsuit

against New York City police officers from the 30th Precinct.  Plaintiff asserts

constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the

individual defendants for First Amendment retaliation, malicious prosecution, and failure

to intervene, and a *Monell* claim against the City of New York for the same constitutional

violations.  Additionally, Plaintiff asserts analogous claims under New York Law against

the individual defendants, and against the City of New York under the doctrine of

*respondeat superior*.  Plaintiff seeks compensatory and punitive damages, costs,

disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## JURISDICTION

2.   This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the First and Fourth Amendment**s** to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.   Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4.   Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5.   Plaintiff respectfully demands a trial by jury on each and every one of his claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.    Plaintiff Sherman Henry is a 25-year-old African-American male with no criminal record, and he is a United States citizen.

7.    The individually named defendants Police Officer Gregory Santana (Shield # 945398) ("PO Santana"), Police Officer Fabrizio Randazzo (Shield # 25263) ("PO

Randazzo"), and Sergeant Daniel Gagliardi (Shield # 4438) ("Sgt. Gagliardi")

(collectively, the "individual defendants") are and were at all times relevant herein

officers, employees and agents of the New York City Police Department ("NYPD").

8.     On the date of the incident giving rise to this complaint, the individual

defendants were assigned to the 30th Precinct.

9.     Each individual defendant is sued in his individual and official capacity.  At

all times mentioned herein, each individual defendant acted under the color of state law,

in the capacity of an officer, employee, and agent of defendant City of New York

("Defendant City").

10.     Defendant City is a municipality created and authorized under the laws of

New York State.  It is authorized by law to maintain, direct, and to supervise the NYPD,

which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

11.     Plaintiff served a Notice of Claim on the Comptroller of the City of New York

within ninety days of the incident, being assigned Claim # 2015PI018114.  At least 30

days have elapsed since the service of the Notice of Claim, and adjustment and payment

has been neglected or refused.

12.     The City of New York demanded a hearing pursuant to General Municipal

Law § 50-h, which hearing was held on August 20, 2015.

13.     This action has been commenced within one year and ninety days after the

occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14.     On February 6, 2015, Plaintiff filed a federal civil rights lawsuit (the "Lawsuit") in the Southern District of New York (15 cv 909 (GBD)) against PO Santana, among other officers from the 30th Precinct (the "Precinct"), for various claims, including false arrest and malicious prosecution.

15.     On June 5, 2015, the Lawsuit was still open and active against PO Santana and the other officers from the Precinct.

16.     On the evening of June 5, 2015, around 6:30 P.M., Plaintiff was sitting on his skateboard and talking to some friends – Mark Holmes and Elijah Smith – outside 36 St. Nicholas Place in Harlem, New York City.

17.     Suddenly, an unmarked car stopped in front of 36 St. Nicholas Place, and PO Santana and PO Randazzo, wearing plain clothes, got out of the car and approached Plaintiff, falsely saying that Plaintiff had a "warrant."

18.     PO Santana and PO Randazzo handcuffed Plaintiff and placed him in their unmarked car, then drove him to the Precinct, where Plaintiff was booked, processed, fingerprinted, and photographed.

19.     At the Precinct, PO Santana and PO Randazzo, knowing no warrant existed, wanting to retaliate against Plaintiff due to the Lawsuit, decided to falsely charge Plaintiff with the crime of Reckless Endangerment in the Second Degree on the mendacious grounds that on May 28, 2015 – a week before – they had seen Plaintiff run four red lights and almost hit other vehicles.

20.     The false allegation that Plaintiff was recklessly driving his motorcycle was first recorded in the form of a Complaint Report (Complaint # 2015-30-02082) on May 28, 2015.

21.     This Complaint Report was entered by PO Santana, who discussed the false allegations in the Complaint Report with Sgt. Gagliardi, another named defendant in the original Lawsuit.

22.     Sgt. Gagliardi, knowing that the reckless-driving accusation against plaintiff was mendacious, approved the making of the false Complaint Report and acted as "Signoff supervisor" for this false complaint.

23.     These false allegations were similar to the false allegations underlying the original Lawsuit.

24.     After spending the evening detained in the Precinct, Plaintiff was transported to Central Booking in lower Manhattan, where he spent numerous hours detained in the holding cells, until his arraignment in the late afternoon of June 6, 2015.

25.     Plaintiff was arraigned on Docket Number 2015NY036129, charged with Reckless Endangerment in the Second Degree, under New York Penal Law 120.20, a Class A Misdemeanor.

26.     The Criminal Court Complaint (the "Complaint") was sworn to by PO Randazzo, who signed his name below a bold statement warning that "false statements…are punishable as a class A misdemeanor…."

27.     The Complaint specifically stated that "[o]n or about May 28, 2015 at about 7:45 PM, at Broadway between West 142nd Street and West 144th Street in the County and State of New York," "I [PO Randazzo] observed the defendant [Plaintiff], who was operating a motorcycle…drive through 4 red lights at the above location, which is a public highway.  I observed at least five cars abruptly stop within approximately two feet from defendant's motorcycle."

28.     Plaintiff was released on his own recognizance by the judge at his arraignment, but he was ordered to return to Criminal Court at 100 Centre Street, Part C, on July 7, 2015.

29.     Plaintiff made two court appearances in Criminal Court before his case was dismissed on September 10, 2015 under Criminal Procedure Law Section 30.30.

30.     Because of Plaintiff's arrest on June 6, 2015, Plaintiff missed work and lost his job at Metro Plumbing, resulting in two weeks without employment and the loss of approximately $1300 in wages.

31.     Because of Plaintiff's two mandatory court appearances in Criminal Court, he missed two days of work at Metro Pest Control, thereby losing approximately $250 in wages.

32.     The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and mendacious behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

33.      There is a systemic failure to identify, discipline, and supervise NYPD officers who fabricate charges, a failure so widespread, obvious, and tolerated as to constitute a custom and policy of Defendant City.

34.     The NYPD's flaccid response to lying officers – particularly in the context of filing false charges – constitutes an irrational custom and policy that fosters a culture of mendacity in the NYPD.

35.     The City has recognized the obvious and significant problem of police officers fabricating criminal charges, but there is no serious mechanism in place by which to

weed out dishonest officers, even when their mendacious behavior abrogates the constitutional rights of citizens.

36.     Proportionate and appropriate discipline sends a message to NYPD officers that they are not above the law and are accountable to the people whom they serve.  But NYPD officers usually face only minor discipline or no discipline whatsoever for making false statement on court documents.

37.     The Civilian Complaint Review Board ("CCRB") has no jurisdiction to investigate allegations of fabricated statements by NYPD officers in criminal court documents.  Investigating, controlling, and punishing this type of wrongdoing is the responsibility of the NYPD.

38.     In 1995, by Executive Order No. 18, Defendant City's Mayor created the Commission to Combat Police Corruption (the "Commission") to monitor and evaluate the NYPD's anti-corruption activities.  The Commission fulfills its mandate to monitor the NYPD's performance by reviewing the investigations of the Internal Affairs Bureau ("IAB"), and presenting its findings in its Annual Report.

39.     Since its inception, the Commission has emphasized the importance of appropriately disciplining officers who make false statements.  On the basis of the Commission's recommendations, the NYPD has adopted a False Statement Policy (*see* NYPD Patrol Guide Section 203-08) that mandates termination of officers who intentionally make false official statements regarding a material matter, unless exceptional circumstances exist.

40.     As the Commission stated in its 2013 Annual Report, "Consistent application of the false statement policy is of utmost importance.  It not only enables members of the

service to know what they can expect if they make false statements, but it also sends a clear message to members of the service, as well as the public, that the Department will not tolerate such conduct" (pg. 74).

41.    The Commission analyzes false statements in official criminal court documents, including supporting depositions, criminal court complaints, summonses, and affidavits.  False statements in such documents are of paramount importance because they have the potential to unjustly deprive citizens of their civil liberties and to destroy the lives of innocent people.

42.    Despite the importance of appropriately identifying and punishing officers who make false statements, the NYPD rarely imposes discipline consistent with its stated policy of terminating officers.  Indeed, the gap between its practice and policy is so wide as to make the NYPD's False Statement Policy a sham.

43.    For example, in the 2014 Annual Report, the Commission examined ten cases involving false statements in sworn court documents; in seven of those cases, the subject officers were found guilty but not separated from the police department.  Such findings – which expose the gap between the NYPD's false statement policy and practice – can be found in virtually every Annual Report issued by the Commission.

44.    Over the past ten years, in its Annual Reports, the Commission has analyzed numerous forms of false statements and has consistently found that the NYPD "fail[s] to follow its false statement policy; "fail[s] to charge the subject officer with making a false statement although such a charge appear[s] appropriate"; levies "other similar charges…to avoid the imposition of the False Statement Policy's requirement of termination"; and creatively skirts the requirement of termination without justification.

And there is no sign of improvement.

45.     In the specific context of fabricated court documents that falsely accuse innocent people of wrongdoing, the Commission has regularly found grossly inadequate punishments, resulting in guilty officers forfeiting vacation days (usually no more than 30 days) but rarely losing their jobs.

46.     To make matters worse, the instances of false statements analyzed by the Commission is a small fraction of the total instances of false statements that occur within the NYPD.  In the 2010 Annual Report, for instance, the Commission identified only ten IAB cases that included allegations of making an official false statement.

47.     The officers who were caught fabricating statements were unlucky – they were captured on videotape, a civilian reported them, their lies were unwittingly exposed – but most dishonest police officers know the system well enough to lie and get away with it.

48.     The number of false statement cases investigated by the IAB in the specific context of court documents is a very small portion of the actual number of instances of material fabrication in court documents.

49.     Defendant City has turned a blind eye to the tens of thousands of criminal cases which are dismissed each year in the Criminal and Supreme Courts of Defendant City; has failed to study how many of those dismissals were due to baseless, fabricated charges; has failed to proactively look for patterns of fabrication and identify charges that should have never been brought.

50.     In a criminal justice system where numbers and statistics have become paramount, the inadequacy of the NYPD's supervision and discipline with respect to

dishonesty in the filing of criminal charges is exacerbated by the pressure on police officers to meet arrest quotas, or "performance goals," which pressure officers to arrest people and file charges unlawfully, a pressure not tempered by adequate safeguards that protect innocent citizens from being wrongfully arrested and charged.

51.     Because arrests are rewarded, while making false arrests and fabricating charges go largely unpunished, police officers have felt incentivized to engage in false arrests and to fabricate criminal charges.

52.     Such perverse incentives become particularly destructive in the hands of dishonest, undisciplined, unsupervised officers.

53.     Through the data cited herein along with well-publicized events (prominent civil rights lawsuits, ticket-fixing, and a secret quota system, to name a few) and other information in its possession, the policymakers of Defendant City have been aware of the NYPD's practice of insufficiently punishing – and thereby encouraging – the filing of fabricated criminal charges.  By doing nothing about this practice, the City has demonstrated deliberate indifference to the rights of its citizens.

54.     Unfortunately, under Mayor Bill de Blasio's administration, the NYPD seems more empowered than ever to thumb its nose at the False Statement Policy.

55.     In its 2015 Report, the Commission found that the Department rarely brought charges under the False Statement provision.  "Instead," the Commission writes, "the Department used other Patrol Guide sections to allege misconduct relating to false statements" (pg. 103), sections which do not carry a presumption of termination.

56.     The notion of police officers lying, cheating, fabricating, manipulating, and misleading has become so accepted and commonplace within the NYPD that the pursuit of justice, which is rooted in truth and fact, has become subverted and degraded.

57.     While the vast majority of police officers are good honest people, they must operate in a police culture so truth-sick and cynical that their morale is crushed, knowing that roguish behavior is rewarded, trust is thwarted, and virtue is perverted.  As a result, the safety, welfare, and liberty of every New Yorker are threatened.

58.     As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

      a.  Violation of his constitutional rights under the First and Fourth Amendments to the United States Constitution;

      b.  Loss of wages;

      c.  Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

### Deprivation of Federal Civil Rights Under Section 1983

59.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

60.     All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

61.     All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the First and Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

62.     The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

63.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### Malicious Prosecution Under Section 1983

64.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

65.     By the actions described, the Defendants deprived Plaintiff of his Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically his right to be free from malicious prosecution.

66.     Without probable cause, the individual defendants directly and actively initiated a criminal proceeding against Plaintiff, creating a fraudulent theory of guilt.

67.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### First Amendment Retaliation Under Section 1983

68.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

69.     By the actions described, the individual defendants retaliated against Plaintiff because he lawfully exercised his First Amendment right to free speech – maliciously prosecuting him for filing a lawsuit.  In doing so, the individual defendants chilled Plaintiff's exercise of his right to free speech.

70.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Failure to Intervene Under Section 1983

71.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

72.     Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights by other law enforcement officers.

73.     The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

74.     As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

## FIFTH CLAIM

### Municipal Liability Under Section 1983

75.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

76.     By the actions described, the Defendant City deprived Plaintiff of his Fourth Amendment right to be free of malicious prosecution through its failure to train, supervise, and discipline mendacious and malicious officers; and through its fostering a culture of abuse and dishonesty among those who wield considerable power over the lives of everyday citizens.

77.     As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

### FIRST CLAIM

**Malicious Prosecution Under N.Y. State Law**

78.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

79.     As detailed above, the individual defendants intentionally and with actual malice initiated a felony prosecution against Plaintiff without probable cause.  The prosecution terminated in Plaintiff's favor when all charges against him were dismissed.

80.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### SECOND CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

81.     Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

82.    Defendant City owed a duty of care to Plaintiff to prevent the malicious prosecution, and mental and emotional abuse sustained by Plaintiff.

83.    Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

84.    Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

85.    Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

86.    As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

### THIRD CLAIM

### Respondeat Superior Under N.Y. State Law

87.    Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

88.    Defendant City is the employer of the individual defendants.

89.    Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the malicious prosecution and First Amendment Retaliation committed by the individual defendants against Plaintiff.

90.    As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

a.    An order awarding compensatory damages for Plaintiff Sherman Henry in an amount to be determined at trial;

b.    An order awarding punitive damages in an amount to be determined at trial;

c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

d.    Such other and further relief as this Court may deem appropriate.

DATED:        July 17, 2016                    _____s/_____
              New York, New York              CYRUS JOUBIN, ESQ.
                                              43 West 43rd Street, Suite 119
                                              New York, NY 10036
                                              (703) 851-2467
                                              joubinlaw@gmail.com
                                              Attorney for Sherman Henry